UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MELANIE B. HAGEN-BREWSTER,** | )<br>)<br>) |
| Claimant, | )<br>) |
| | ) Case No. CV-09-S-206-NE |
| vs. | )<br>) |
| **MICHAEL J. ASTRUE, Commissioner, Social Security Administration,** | )<br>)<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant, Melanie Hagen-Brewster, commenced this action on February 3, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly evaluated her mental impairments and erred by failing to order a consultative psychological examination. Upon review of the record, the court concludes that these contentions are without merit.

Claimant does have a history of treatment for mental health conditions. She was hospitalized for approximately one week in February of 2004 due to suicidal ideations. During that hospitalization, she was diagnosed as suffering from major depressive disorder, recurrent; panic disorder with agoraphobia; generalized anxiety disorder; and family and relationship issues. She was assessed with a GAF score of 25, indicating very severe impairments.[1] *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision, 4th ed. 2000).

Claimant also was treated by Dr. Scott Hellard, a psychiatrist, from April to October of 2004. Claimant repeatedly complained of depression, anxiety, and moodiness, all of which were exacerbated by situational stressors. Dr. Hellard diagnosed bipolar disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder, and he prescribed several medications to treat those

---

[1] Tr. at 196-200.

conditions.[2]

Claimant received treatment from the Mental Health Center from September of 2003 to April of 2007. Claimant missed an appointment in October of 2003[3] and did not return for another appointment until September of 2005.[4] Records after that date reflect fairly consistent treatment for depression, bipolar disorder, paranoid thoughts, panic attacks, agoraphobia, irritability, tearfulness, and overwhelmed feelings.[5] On November 7, 2005, Dr. Edward Love, a psychiatrist at the Mental Health Center, performed an initial assessment and mental status examination. Dr. Love stated:

> [Claimant] is a well developed, well nourished, white female who is pleasant and cooperative with the examiner. She has good eye contact. Speech is clear and coherent, normal rate and not pressured, logical and goal directed. Mood is described as depressed and nervous. Affect appears anxious and dysthymic to euthymic with increased intensity, mild lability, is appropriate. She became tearful at times during the interview when talking about what she had experienced. She initially felt a little short of breath and admitted to panic symptoms when she first came back to the office but these settled down during the course of the interview. There is no suicidal or homicidal ideation. No psychotic symptoms noted though she has experienced some feelings that she was being watched at times in the past. She also heard voices in the remote past. Her judgment appears fair. Her intellect appears average based on vocabulary and fund of knowledge.[6]

---

[2]Tr. at 304-11.
[3]Tr. at 373-74.
[4]Tr. at 372.
[5]Tr. at 354-77.
[6]Tr. at 364.

Dr. Love diagnosed claimant with panic disorder with agoraphobia, and major depression, recurrent, mild, without psychosis. He prescribed medication to treat those conditions.[7] Claimant was discharged from care at the Mental Health Center in March of 2007, due to her failure to attend scheduled appointments and otherwise comply with her treatment plan.[8] A treatment note penned approximately two months prior to her discharge stated that claimant had made "minimal progress" and that she needed "continued treatment."[9] Claimant was seen by Dr. Love one final time in April 11, 2007, because Dr. Love wanted to evaluate claimant's need for medication before she was discharged. Dr. Love stated that claimant continued to experience problems with depression, panic disorder with agoraphobia, and family issues, and he assessed a GAF score of 60, indicating that only moderate symptoms were present, and that claimant manifested only moderate difficulty in social, occupational, or school settings. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision, 4th ed. 2000).

The ALJ considered all of these records, and he credited Dr. Love's assessment that only moderate symptoms were present, because that assessment was "consistent with the evidence of record [and] not inconsistent with any significant evidence."[10]

---

[7]*Id.*
[8]Tr. at 411-13.
[9]Tr. at 414.
[10]Doc. no. 29.

The ALJ also credited the opinion of the State Agency physician, who noted that while claimant experienced depression and anxiety disorder with panic attacks and agoraphobia, she experienced only mild restriction of her activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace.[11]   Thus, the ALJ concluded that claimant's "major depression and panic disorder with agoraphobia are 'severe' impairments which have resulted in mild restriction of daily living activities, mild difficulty with maintaining social functioning, and moderate difficulty with maintaining concentration, persistence, and pace which is commensurate with the performance of unskilled work."[12]  The ALJ's assessment of claimant's vocational abilities was consistent with this conclusion:  he determined that claimant could perform light work, but that any work performed would have to be unskilled "due to moderate limitations in maintaining concentration, persistence, or pace."[13]

Claimant argues that the ALJ's residual functional capacity finding was inconsistent with the records from her mental health treatment providers.  It is true that the record shows a long history of treatment for a variety of mental health conditions, with only sporadic improvement.  Even so, the mere existence of a mental

---

[11]Tr. at 382-96.
[12]Tr. at 30.
[13]Tr. at 27.

5

health impairment does not determine disability. Instead, the relevant consideration is the effect of the impairment, or combination of impairments, on the claimant's ability to perform substantial gainful work activities. *See* 20 C.F.R. § 404.1505 (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)).

There is no evidence in the record that claimant's disability actually resulted in disabling impairments. Both claimant's treating psychiatrist and the State Agency physician have assessed her with no more than mild to moderate limitations. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (holding that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary") (internal citations omitted); 20 C.F.R. §§ 404.1527(f)(2)(i) & 416.927(f)(2)(i) (stating that, while the ALJ is not bound by the findings of a State Agency physician, the ALJ should consider such a physician to be both "highly qualified" and an "expert" in Social Security disability evaluation).

Furthermore, claimant reported daily activities that included parenting three children, attending sporting events, driving in carpool, shopping by herself, and visiting family and friends. The court recognizes that these activities are not necessarily indicative of the ability to perform work activity on a sustained basis, but they are inconsistent with the level of disabling mental impairment claimant claims to experience. Absent any evidence that claimant's mental impairments actually had more than a mild to moderate effect on her ability to perform work activities, the court cannot conclude that the ALJ's decision was inconsistent with the medical findings.

Nor was it necessary for the ALJ to obtain a consultative mental examination in order for the record to be complete. It is true that the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision. Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 Fed. Appx. 597, 598 (11th Cir. 2005) (emphasis supplied). Furthermore, claimant bears the ultimate burden of producing evidence to support her disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003)

(citing 20 C.F.R. §§ 416.912(a), (c)). The court concludes that the record in this case, including the assessments of claimant's treating psychiatrist and the State Agency physician, was sufficient to give substantial support to the ALJ's decision, and the ALJ was not required to order an additional mental evaluation.

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 28th day of October, 2009.

_____
United States District Judge